**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001305
22-DEC-2017
09:27 AM**

NO. CAAP-14-0001305

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ELESTHER CALIPJO, Plaintiff-Appellee, v.
JACK PURDY, REGAL CAPITAL CORPORATION,
REGAL CAPITAL COMPANY, LLC, Defendants-Appellants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 04-1-0003)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Leonard and Reifurth, JJ.)

Defendants-Appellants Jack Purdy (**Purdy**), Regal Capital Corporation (**Regal Corp.**), and Regal Capital Company, LLC (**Regal LLC**) (collectively, **Appellants**) appeal from the Final Judgment (**Final Judgment**) filed on July 18, 2014, in the Circuit Court of the Fifth Circuit[1] (**Circuit Court**).

After a jury trial, pursuant to a special verdict, the Circuit Court entered judgment in favor of Plaintiff-Appellee Elesther Calipjo (**Calipjo**) as follows: (1) with respect to Count 3 of the First Amended Complaint (**Complaint**), $1.00 against Purdy and $1.00 against Regal Corp. for breach of the Alii Ranch

---

[1] The Honorable Randal G.B. Valenciano presided.

Estates Reservation DROA (**Alii DROA**); (2) with respect to Count 4 of the Complaint, $1.00 against Purdy and $1.00 against Regal Corp. for breach of the Moana Ranch Estates Reservation DROA (**Moana DROA**); (3) with respect to Count 11 of the Complaint, $1.00 against Purdy and $1.00 against Regal Corp. for breach of the covenant of good faith and fair dealing in the Alii DROA, and $1.00 against Purdy and $1.00 against Regal Corp. for breach of the covenant of good faith and fair dealing in the Moana DROA; and (4) with respect to Count 10 of the Complaint, treble damages totaling $166,865.00 against Purdy,[2] $166,875.00 against Regal Corp., and $7,500.00 against Regal LLC for unfair and deceptive trade practices.[3] The jury also found that Purdy is the alter ego of both Regal Corp. and Regal LLC. After trial, the Circuit Court denied Regal LLC's request for attorneys' fees.

On appeal, Appellants contend that the Circuit Court erred in: (1) denying Appellants' motion for judgment as a matter of law after Calipjo rested his case; (2) denying Appellants' renewed motion for judgment as a matter of law after they rested their case; (3) denying Appellants' post-trial motion for judgment as a matter of law; (4) concluding that Regal LLC

---

[2] It appears, based on the special verdict form, that this amount should have been $166,875.00. However, in light of our disposition concerning this award, any clerical error in this amount is moot.

[3] Pursuant to an earlier summary judgment order, judgment was entered in favor of Purdy, Regal Corp., and Regal LLC, and against Calipjo, on Counts 1 (Civil Conspiracy), 2 (Alter Ego), 5 (Fraud and/or Negligent Misrepresentation), 6 (Tortious Interference with Prospective Economic Advantage), 7 (Tortious Interference with Contractual Relationship), 8 (Tortious Interference with Business Relationship), 9 (Intentional Interference with Economic Relations), and 12 (Intentional Infliction of Emotional Distress). Calipjo did not seek appellate relief from the entry of partial summary judgment. Calipjo withdrew Counts 13 (Negligent Infliction of Emotional Distress) and 14 (Attorneys' Fees and Costs).

was not the prevailing party against Calipjo when it denied Regal LLC's motion for attorneys' fees and costs; and (5) denying Regal LLC's motion for an award of attorneys' fees and costs. Appellants ask this court to vacate the jury verdict, enter judgment in favor of Appellants and against Calipjo on all remaining claims, and remand this matter to the trial court for consideration of Regal LLC's request for attorney's fees.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Appellants' points of error as follows:

Appellants orally moved for judgment as a matter of law on all claims against them, as well as on Calipjo's request for a finding that Purdy was the alter ego of Regal Corp. and Regal LLC, on October 2, 2013, after the close of Calipjo's case-in-chief. The motion was denied. Appellants renewed their oral motion on October 3, 2013, after they rested their case. The motion was again denied. After the entry of the Final Judgment, on July 28, 2014, Purdy and Regal LLC filed a renewed motion for judgment as a matter of law. In the post-judgment motion, Purdy and Regal LLC argued principally that they were not parties to either DROA, they did not breach either DROA, and they had no contact with Calipjo at any time relevant to his claims. This motion was denied at a hearing held on September 18, 2014.

The Hawai'i Supreme Court has held that a trial court's ruling on a motion for judgment as a matter of law is reviewed *de novo*.

3

> A trial court's ruling on a motion for judgment as a matter of law is reviewed *de novo*. A motion for judgment as a matter of law may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor.

Ray v. Kapiolani Med. Specialists, 125 Hawai'i 253, 261, 259 P.3d 569, 577 (2011) (citations, quotations marks, and brackets omitted).

(1)   We first examine Appellants' challenge to the jury's finding that Purdy was the alter ego of both Regal Corp. and Regal LLC.[4]  The supreme court has explained the alter ego doctrine as follows:

> It is well settled that establishing a corporation to limit personal liability is proper and is, alone, an insufficient basis for the application of the doctrines of alter ego or piercing the corporate veil. See 1 Fletcher Cyclopedia, *supra*, § 41.20, at 596; see generally Henry Waterhouse Trust Co. v. Home Ins. Co. of Hawai'i, 27 Haw. 572, 581-82 (1923).
>
> The common purpose of statutes providing limited shareholder liability is to offer a valuable incentive to business investment. Although the greatest judicial deference normally is accorded to the separate corporate entity, this entity is still a fiction. Thus, when particular circumstances merit-*e.g.*, when the incentive value of limited liability is outweighed by the competing value of basic fairness to parties dealing with the corporation-courts may look past a corporation's formal existence to hold shareholders or other controlling individuals liable for "corporate" obligations. Labadie Coal Co. v. Black, 672 F.2d 92, 96 (D.C. Cir. 1982) (citing Dodd, The Evolution of Limited Liability in American Industry, 61 Harv. L. Rev. 1351 (1948)). When a corporation is the mere instrumentality or business conduit of another corporation or person, the corporate form may be disregarded.
>
> The alter ego doctrine has been adopted by the courts in cases where the corporate entity has been used as a subterfuge and to observe it would work an injustice. The rationale behind the theory is that, if the shareholders or the corporations themselves

---

[4]      We note that the jury was not asked to, and therefore did not, determine whether Regal Corp. was the alter ego of Regal LLC (or vice versa).

disregard the proper formalities of a corporation, then the law will do likewise as necessary to protect individual and corporate creditors. The rule is designed to give incentives to those using the corporate form to obey the state's laws fully by maintaining the formalities and the legal separateness of the corporation. Thus, those who fail to maintain the corporate formalities cannot expect the state to grant them the limited liability that flows from the corporate form. While the instrumentality doctrine has its origin in the context of parent-subsidiary relationships, it has been suggested that a similar analysis is applicable to an individual shareholder's relationship with a corporation.

A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather to disregard the corporation as a distinct defendant is procedural. A finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation. An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract. The alter ego doctrine is thus remedial, not defensive, in nature. **One who seeks to disregard the corporate veil must show that the corporate form has been abused to the injury of a third person.**

Courts apply the alter ego doctrine with great caution and reluctance. In fact, many courts require exceptional circumstances before disregarding the corporate form.

1 _Fletcher Cyclopedia_, _supra_, § 41.10, at 568-581 (emphasis added).

Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai'i 224, 240-41, 982 P.2d 853, 869-70 (1999) (footnote omitted; emphasis added), _superseded by statute on other grounds as noted in_ Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 427 n.9, 228 P.3d 303, 307 n.9 (2010).

The supreme court further noted in Robert's that "Hawai'i courts have been reluctant to disregard the corporate entity." Id. at 241 n.12, 982 P.2d at 870 n.12 (citations omitted). Earlier, in Chung v. Animal Clinic, Inc., 63 Haw. 642, 645, 636 P.2d 721, 724 (1981), the supreme court adopted the line of authorities holding: "Even where all the stock is owned by a

sole shareholder, there seems no adequate reason to depart from the general rule that the corporation and its shareholders are to be treated as distinct legal persons." (Citations omitted). The court further elucidated:

> Under Hawaii law, there is no specified or minimum number of stockholders that is required for valid corporate existence. The fact that a sole or principal stockholder dominates a corporation violates no statutory requirement, is not opposed to public policy, and constitutes no fraud on creditors. Since we decide that exclusive stock ownership and control of corporations is not solely determinative on the issue of whether we should disregard the corporate entity, we must include other facts in our analysis.

Id.

In Robert's, the court identified over two dozen factors that courts have weighed in determining whether the alter ego doctrine applies and stated:

> Generally speaking, a corporation will be deemed the alter ego of another "where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim."
>
> Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that [1] the corporation is not only influenced and governed by that person, but that there is such a unity of interest . . . that the individuality, or separateness, of such person and corporation has ceased, and [2] that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

Robert's, 91 Hawai'i at 241-42, 982 P.2d at 870-71 (citations omitted).

We have carefully examined the testimony and evidence presented to the jury, giving Calipjo's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in Calipjo's favor. As Calipjo argues on appeal, Purdy was the sole shareholder, director, and officer of Regal Corp. While this

evidence is a factor for consideration, it is not sufficient to establish that Purdy is the alter ego of Regal Corp., even in light of Purdy's heavy burden on a motion for judgment as a matter of law.  There is no evidence that Regal Corp. failed to comply with applicable law or that the corporate form was used to abuse a third party.

Calipjo further argues that there was evidence that Regal Corp. was undercapitalized.  "Undercapitalization" is defined as "[t]he financial condition of a firm that does not have enough capital to carry on its business."  BLACK'S LAW DICTIONARY 251 (10th ed. 2014).  Here, the evidence that Calipjo points to is Purdy's testimony concerning whether Regal LLC paid money to Regal Corp., as payment for the Alii and Moana properties.  Purdy testified that, although he did not recall specifically how much Regal LLC paid Regal Corp. for the Alii and Moana properties, he believed that the amounts were equivalent to the amounts Regal Corp. had invested in the properties.  He explained that the consideration between the entities was done through a book entry, for tax purposes, and that the transfer was related to changes in the law that would allow the properties to be set up as agricultural condominiums for other than livestock and farming purposes.  This testimony does not evidence or infer any particular level of capitalization of Regal Corp., let alone undercapitalization such that it would bring about injustice and inequity not to find Purdy to be the alter ego of Regal Corp.

Calipjo next argues that Purdy is the sole member and manager of Regal LLC, which he asserts was formed in 2003,[5] and that certain testimony evidences that Regal LLC is undercapitalized. Again, Calipjo fails to point to any evidence of disregard for legal formalities in the establishment of the LLC and the cited testimony has nothing to do with the capitalization of this entity.

Next, Calipjo again points to the testimony regarding Purdy causing the transfer of the Alii and Moana properties from Regal Corp. to Regal LLC through a book entry, rather than writing a check, asserting that Purdy did so after Calipjo refused to execute escrow cancellation forms. However, the uncontroverted evidence, including Calipjo's own testimony, is that Purdy did so in his role as the owner and controlling shareholder of Regal Corp. This case does not involve findings, or even claims, of fraudulent transfer with respect to these transfers.[6] There is no evidence that these transfers rendered Regal Corp. unable to satisfy its corporate debts and obligations.

Finally, Calipjo points to his own testimony that, more than six years after the cancellation of the DROAs, after this lawsuit had been pending for over five years, Purdy said to Calipjo, outside the Kauai courthouse: "He doesn't intend to

---

[5]     The testimony cited by Calipjo does not reference any dates.

[6]     Although Calipjo asserts on appeal that Regal Corp. defrauded him, he did not present a fraud or fraudulent inducement claim to the jury, there was no jury instruction or finding regarding fraud, and summary judgment was entered against Calipjo on his fraud claim.

sell me the property in the first place anyway." Again, even viewing this statement in the light most favorable to Calipjo, with every legitimate inference, this statement does not support a finding that "recognition of the corporate fiction would bring about injustice and inequity or . . . that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." Robert's, 91 Hawai'i at 241-42, 982 P.2d at 870-71 (citations omitted). There is simply no evidence in the record that the corporate form has been abused to cause injury to Calipjo.

Thus, we conclude that there was no evidence to support the jury's verdict that Purdy was the alter ego of Regal Corp. and Regal LLC.

(2) Next, we address Appellants' contentions on appeal that the Circuit Court erred in denying the motions for judgment as a matter of law as to the breach of contract and breach of the covenant of good faith and fair dealing claims against Purdy.[7]

Appellants argue that the DROA agreements were entered into between Calipjo and Regal Corp., Purdy was not a party to either DROA, and therefore, Purdy cannot be held liable for breaching the express or implied terms of those agreements. We agree. See, e.g., Young v. Allstate Ins. Co., 119 Hawai'i 403, 428, 198 P.3d 666, 691 (2008) (absent a contract between the parties, a claim for breach of an implied covenant of good faith and fair dealing must fail). Calipjo's contract claims against Purdy are entirely dependent on the assertion that Purdy is the

_____

[7] The jury did not find Regal LLC liable as to breach of contract or breach of the covenant of good faith and fair dealing as to either DROA.

9

alter ego of Regal Corp. and, therefore, Purdy is personally liable for all corporate debts of Regal Corp. As we have concluded that the Circuit Court erred in failing to grant Appellants' motion for judgment as a matter of law as to the finding that Purdy is the alter ego of Regal Corp. and Regal LLC, we further conclude that the Circuit Court erred in failing to grant Appellants' motion for judgment as a matter of law in favor of Purdy (only) as to Counts 3, 4, and 11, the breach of contract and breach of the covenant of good faith and fair dealing claims.

Appellants further argue that Regal Corp. was entitled to judgment as a matter of law on the contract claims because the DROAs, as modified by the seller's agent and thereafter executed by Calipjo, expressly permitted Regal Corp. to terminate both DROA's at its discretion. Calipjo does not deny that the express terms of the DROAs, as entered into by Calipjo, allowed Regal Corp. to cancel the agreements. Calipjo argues instead that Regal Corp. was not entitled to judgment as a matter of law because, contrary to what Calipjo was told by Regal Corp.'s agent prior to signing off on the modification which allowed the seller - as well as the buyer - to cancel the DROA agreements, the subject condominium statute did not require that both parties be allowed to cancel the agreement. Calipjo makes no other argument and presented no other evidence to the jury of a breach of either the Alii DROA or the Moana DROA. Thus, even giving Calipjo's evidence the value to which he was entitled, we conclude that Calipjo's claims that Regal Corp. breached the terms of the DROA agreements must fail and the Circuit Court erred when it failed

to enter judgment as a matter of law in favor of Regal Corp. on Counts 3 and 4.

The Hawai'i Supreme Court has recognized that "in every contract, there is an implied covenant of good faith and fair dealing. The obligation to deal in good faith is now a well-established principle of contract law. Restatement (Second) Contracts § 205 (1979) provides that '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" Best Place, Inc. v. Penn America Ins. Co., 82 Hawai'i 120, 124, 920 P.2d 334, 338 (1996). The implied covenant of good faith and fair dealing mandates that "neither party will do anything that will deprive the other of the benefits of the agreement." Id. at 1224, 920 P.2d at 338 (citations omitted). "[G]ood faith performance emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc., 107 Hawai'i 423, 436, 114 P.3d 929, 942 (App. 2005) (citation omitted).

Here, the jury heard testimony that when Calipjo signed off on the "or seller" modification and was told to backdate his approval, he asked Regal Corp.'s agent, "Will this change my position because you are the seller or buyer?" According to Calipjo's testimony, the agent responded, "No. I just - this is just a mere technicality with the CPR laws that they're doing." Only after Calipjo entered into agreements with third parties to resell the Alii and Moana properties after his deals with Regal Corp. closed, Calipjo received cancellation letters, signed by

11'

Jack Purdy for Regal Corp., stating that due to recent changes in the law and substantial increases in the real estate market, he was electing to cancel the DROA agreements. Regal Corp.'s agent also told Calipjo that because the real estate value had gone up, he had to cancel the deal. Calipjo further testified that Purdy later told him that he never intended to sell him the properties. In light of this evidence, as well as all of the evidence presented to the jury and the reasonable inferences therefrom, we cannot conclude that the Circuit Court erred when it denied Appellants' motions for judgment as a matter of law in favor of Regal Corp. on the breach of the covenant of good faith and fair dealing claims in Count 11.

(3) Appellants argue on appeal that the Circuit Court erred in denying the motions for judgment as a matter of law as to Calipjo's unfair and deceptive trade practices claims. Hawaii Revised Statutes (HRS) § 480-2(a) (2008) provides, in relevant part, that "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." "[A] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Balthazar v. Verizon Haw., Inc., 109 Hawai'i 69, 77, 123 P.3d 194, 202 (2005) (citation and quotation marks omitted). "[A] deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 262, 141 P.3d

427, 435 (2006) (citation, quotation marks, and brackets omitted). "A representation, omission, or practice is considered material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Id. (citation and quotation marks omitted). This inquiry is objective - the test is "whether the act or omission is likely to mislead consumers." Id. (citation and quotation marks).

Here, the evidence at trial included, *inter alia*, that when Calipjo first signed the Alii DROA and Moana DROA, they stated, "Buyer may terminate this reservation at anytime prior to becoming a binding contract by written notice to seller." However, the next day Regal Corp.'s agent called Calipjo and told him that they had to add the "or Seller" wording "because of the CPR law." Calipjo reportedly asked the agent whether the modification would change his position in buying the property and was told that it would not. On that basis, Calipjo initialed the change, and at the agent's direction, backdated it to the date the agreement was first signed. Calipjo testified, "I went back to sign this thing, and he told me to backdate it. Backdate this to 12 because of the CPR law, the State of Hawaii." Calipjo continued, "And I asked him, 'Will this change my position because you are the seller or buyer?' And he said, 'No. I just - this is just a mere technicality with the CPR laws that they're doing.'" Later, Regal Corp. cancelled the DROAs and stated that it was exercising its contractual right to cancel. Shortly after Calipjo indicated he would not sign off on the cancellation, the

Alii and Moana properties were transferred to Regal LLC. Several years later, Purdy reportedly told Calipjo that he never intended to sell the property to Calipjo in the first place. It appears that, weighing this evidence, as well as all of the other evidence presented at trial, the jury found, *inter alia*, that Regal's acts or practices in its dealings with Calipjo were unfair or deceptive, as those terms were defined in the court's instructions to the jury.

Giving Calipjo's evidence all of the value to which he is legally entitled, and disregarding conflicting and inconsistent evidence or inferences, we conclude that sufficient evidence supports the jury's verdict with respect to Calipjo's unfair or deceptive trade practices claims against Regal Corp.

However, Calipjo identifies no evidence of a practice engaged in by Regal LLC that offended established public policy or that was immoral, unethical, oppressive, unscrupulous or substantially injurious to Calipjo and we find none. Likewise, the record in this case is devoid of any evidence of a material representation, omission, or practice by Regal LLC that was likely to mislead consumers acting reasonably under the circumstances. The jury did not find that Regal LLC was the alter ego of Regal Corp. Therefore, there is no evidence supporting the jury's verdict against Regal LLC with respect to Calipjo's unfair or deceptive trade practices claim.

With respect to Purdy, Calipjo cites HRS § 480-17(a) (2008), which provides: "Whenever a corporation violates any of the **penal provisions** of this chapter, the violation shall be

14

deemed to be also that of the individual directors, officers, or agents of the corporation who have authorized, ordered, or done any of the acts constituting in whole or in part the violation." (Emphasis added). However, Regal Corp.'s unfair or deceptive acts, as found by the jury, were unlawful under HRS § 480-2 and subjected Regal Corp. to civil liability, but they did not invoke the penal provisions of HRS chapter 480. See, e.g., HRS §§ 480-15.1 & 480-16. Thus, HRS § 480-17 does not apply to deem that Regal Corp.'s violations are also the violations of Purdy on the grounds that he authorized or ordered them.

Accordingly, we conclude the Circuit Court did not err in refusing to enter judgment as a matter of law as to the unfair or deceptive trade practices claims against Regal Corp., but the court erred in refusing to enter judgment as a matter of law as to the unfair or deceptive trade practices claims against Regal LLC and Purdy.

(4) Finally, Appellants contend that the Circuit Court should have ruled that Regal LLC was a prevailing party. Calipjo argues in response that there can only be one prevailing party and the Circuit Court properly determined that Calipjo was the prevailing party because the jury found in favor of Calipjo against all defendants. This court has previously held that "[i]n multiple parties cases, . . . a party may be a loser as to one party and a winner as to another[.]" Rosa v. Johnston, 3 Haw. App. 420, 431, 651 P.2d 1228, 1236 (1982) (citation omitted). Particularly in light of our ruling that the Circuit Court erred in denying judgment as a matter of law on the claims

15

against Regal LLC, we conclude that the Circuit Court erred in its determination that Regal LLC was not a prevailing party.

HRS § 607-14 (2016) provides, in relevant part, that "there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable[.]" "The reasonableness of an expenditure of attorneys' fees is a matter within the discretion of the circuit court." Finley v. Home Ins. Co., 90 Hawai'i 25, 39, 975 P.2d 1145, 1159 (1998). Accordingly, we remand the issue of Regal LLC's attorneys' fees to the Circuit Court to determine, in its discretion, the reasonableness of Regal LLC's requested attorneys' fees.

For the reasons set forth above, the Circuit Court's July 18, 2014 Final Judgment is affirmed in part, reversed in part, and vacated in part as follows: (1) with respect to Count 3 of the Complaint, we reverse the judgment in favor of Calipjo and against Purdy and Regal Corp. for breach of the Alii DROA; (2) with respect to Count 4 of the Complaint, we reverse the judgment in favor of Calipjo and against Purdy and Regal Corp. for breach of the Moana DROA; (3) with respect to Count 11 of the Complaint, we reverse the judgment in favor of Calipjo and against Purdy for breach of the covenant of good faith and fair dealing in both the Alii DROA and Moana DROA, and we affirm the judgment in favor of Calipjo and against Regal Corp. for breach of the covenant of good faith and fair dealing in both the Alii DROA and the Moana DROA; and (4) with respect to Count 10 of the Complaint (unfair and deceptive trade practices), we reverse the

treble damages totaling $166,865.00 entered in favor of Calipjo and against Purdy, we affirm the treble damages totaling $166,875.00 entered in favor of Calipjo and against Regal Corp., and we reverse the treble damages totaling $7,500.00 entered in favor of Calipjo and against Regal LLC.  We also reverse the Final Judgment's determination that Purdy is the alter ego of both Regal Corp. and Regal LLC.  The Circuit Court's denial of Regal LLC's request for attorneys' fees is vacated and remanded for further proceedings.  The Circuit Court's Final Judgment is hereby affirmed in all other respects.

DATED: Honolulu, Hawai'i, December 22, 2017.

On the briefs:

Richard E. Wilson,
for Defendants-Appellants.

Donna E. Richards,
Mark R. Zenger,
(Richards & Zenger),
for Plaintiff-Appellee.

Craig H. Nakamura
Chief Judge

Associate Judge

Laurence M. Ruth
Associate Judge

17